We're happy to have you here today and we're thrilled to be sitting today, Judge Legault and I, with Judge Ragh Singhal from the Southern District of Florida. Thank you. We appreciate Judge Singhal's assistance and we look forward to the next couple of days with him. Before we get started, just a quick reminder about our lighting system. Please do follow it when the red light goes on. Your time is up. Of course, if we are asking you a question, you're responding to that question, please go ahead and answer the question because we wouldn't be asking if we didn't want to hear the answer. Other than that, as I said, we would appreciate it if you would stick to the timing requirements. All right. And with that, we will begin with Pringle v. Secretary of the Florida Department of Corrections. Thomas Duffy Good morning. I am Thomas Duffy here on behalf of the Secretary of the Florida Department of Corrections and Attorney General Ashley Moody. May it please the Court and good morning, Counsel. We took this appeal because we believe the lower court made two errors. First, the court found the claim upon which it granted relief had been exhausted and this court's clear precedents show that it had not been. The claim was not presented as a federal claim in state court. It was presented purely as a state court claim. Second, we believe that the merits decision also was an error. We believe the judge actually reweighed evidence, did not find, did not show proper deference, and did not find that the error was harmless as we argue that it was. These arguments are independent of each other. Can I ask you a question? If we were to agree with you, I'm not saying that we do, but if we were to agree with you that ground six was not exhausted, why would we be considering it in the first instance and not send it back to the district court? If it's unexhausted, I think that ends the case altogether. I think it ends right there. If it's unexhausted, it was not cognizable and therefore, you could send it back to the district court with orders to reinstate the conviction for leaving the scene of a fatal crash. Actually, I'd like to turn your attention, if I could, to the merits. I understand your position on exhaustion, and I'm going to question your friend on the other side of the aisle about that, but let's just talk about the merits for a moment, if we could. It seems to me that this was, I mean, clearly problematic from the standpoint of the jury being instructed that it could find her guilty if she knew or should have known she was in a crash when Florida Supreme Court law says that she had to know she was in the crash. Why isn't that an error? Well, it's an error, but not an error of constitutional dimension and not an error for federal habeas purposes. Why isn't it an error of constitutional dimension in as far as a due process violation? That her jury was instructed that it could convict her of a crime that wasn't actually a crime, right, in that it could convict her if she should have known that she was involved in a crash when the actual crime, as the Florida Supreme Court has construed it, required her to actually have known. Yes, I understand that, but when jury instructions, this was an unobjective to jury instruction, when jury instruction... Plain error, though. I'm sorry? It's plain error, though. No, ma'am. I disagree. I think it would have to be structural error, and the case that we supplemented with Nader versus United States expressly says that. But why isn't it, why wouldn't it be? I mean, it seems like it's pretty fundamental error, structural error, to suggest that a person can be convicted of a crime that doesn't exist. Why is that not structural error? The crime that doesn't exist being that she should have known there was a crash when the crime, as the Supreme Court of Florida has defined it, is that she knew there was a crash. Well, preliminarily, let me respectfully disagree with your assessment of it. I don't think that is a crime that doesn't exist. That is no more than a mens rea determination, and the jury was instructed both ways. They were instructed that... I'm so sorry, but let me just, if I can interrupt you for a second. There's a case called Rehafe. It involves the federal firearm possession law, and the Supreme Court held in Rehafe, which is a totally different kind of case, but you'll see why I'm addressing it in a moment, that in order for a conviction to be valid under Rehafe, that the defendant not only had to know that he was in possession of the firearm, but also had to know that he was a convicted felon. It wasn't enough just to be a convicted felon. He had to know he was a convicted felon. The reason for that was because that is what the statute requires, and a conviction when you don't have both elements there is a violation of not only due process, but also the separation of powers because it effectively causes the court to create a new crime. Do you understand what I'm saying? I understand that. I am unfamiliar with the case. Could you spell the name so that I can... Sure, sure. It's Rehafe, R-E-H-A-I-F, and in fairness, I understand why you wouldn't necessarily know about it. It's a federal firearm felon in possession of a firearm case, so it's not on point as to this Florida state law, but the notion of having to convict on every element of the crime and not wrongly instruct the jury on any one part of the crime is the point that I'm finding it relevant for. I understand your point. Again, we respectfully disagree with that. As I said, this was an unobjected to jury instruction, and that is under Supreme Court case law, structural error, and structural error on jury instructions, and the only case that I know of where that was considered structural error involved the reasonable doubt instruction. In other words, an instruction or a finding on less than reasonable doubt, and that's not what happened here. In that reasonable doubt case that you're talking about, that was a case where 3.7, the reasonable doubt instruction, was never even read to the jury, right? I'm not... I think so. There are several cases we didn't... This has been a learning experience for me, and I learned about this a couple of days ago. That's why we supplemented when we did. But my question to you with regard to this instruction is you agree, even though it didn't change until maybe four years later with the Dorsett case, that this instruction was, in fact, a bad instruction. You agree with that? It is now. At the time, it was the standard instruction that actually... I hate to say this, but it didn't really change until 2018. It didn't change for three years after Dorsett. Even though it was the standard instruction, Dorsett relied on an earlier precedent that showed that the standard instruction was wrong, even at the time of Ms. Pringle's trial. Isn't that true? They relied on... And this gets really tangled. They relied on Kahour's, which was the first DCA case, and they discussed Mancuso. Mancuso was, I think, the genesis of the jury instruction for should have known. If you delve deeply enough into it, you'll see the issue in Mancuso was actually whether the person had knowledge of the serious nature of the crash. In other words, rather than had knowledge that a crash had occurred at all. Well, Mancuso was 1995. It was 20 years ahead of Dorsett. But even though they answered the certified question the way that you're saying, they recognized it should be new, not should have known, correct? I'd have to look back at Mancuso again. As I said, we don't have any argument to make that the jury instruction was, as situated now, actually correct. If there are no further questions, I'll reserve the rest of my time. Thank you, counsel. Thank you. All right, we'll hear next from Mr. Bashir. May it please the court, and good morning, counsel, and your honors. I'd actually like to pick up on the rave point, because I think it will encapsulate exactly why the marriage decision was correct here, and why this claim was exhausted, because they're somewhat intertwined together. So here, the district court did not err in finding that the claim was both exhausted and on the merits, because by contending that the trial court was misinformed, or misstated Florida law on the essential element of knowledge, Ms. Pringle raised a claim that she was denied her due process right to a full and fair conviction, beyond a reasonable doubt, on all the essential elements of the offense. That, by its nature, is a constitutional question. And the only real concern that we end up having, and as your honor, I think, was alluding to, is the question of harm, of whether we have prejudice. We have prejudice under Chapman, Brecht, structural error, et cetera. Now, why is this claim exhausted? And I know there's a point of contention here. So I do want to take a step back, and just to reset the framework, because I think it's a little bit of a ship's passing in the night in the briefing. The exhaustion doctrine really stems from this idea that, one, we want to give state courts fair opportunity to apply the applicable legal standards to the claims that were presented. And number two, we want to give the states an opportunity to apply the correct legal framework. And what is not required, and what the Supreme Court has rejected over and over, whether it's in Pickard or in Baldwin, Anderson, is a requirement of using magic words, a requirement that you have to use the phrase due process, even. What the Supreme Court has said is what's not enough are just the facts, but the substance and form of the claim is important. So really, when we strike to the heart of this case, and why it is a due process question, Florida and federal law are both coextensive in the due process right to a conviction beyond reasonable doubt all the essential elements of the offense. And a misstatement of law does rise to that constitutional level. And then the question just becomes a question of harm. So by raising this claim under Florida law and federal law, 3850A1, and we can use the negative implication principle just to look at the other claims that were raised. Here we have a specific invocation of both state law and the U.S. Constitution, so a federal label, together with a substantive claim that is about the misstatement, the fundamental misstatement on, as Judge Rosenbaum, you're exactly right, I would agree, on the essential, I believe Rahib's exact language is, it's the essential element that separates otherwise innocent conduct from the grob man of the offense, a loinist, gypsum, staples. All of these cases are stemming from the same principle. The mens rea, what here in Florida strikes the affirmative duty to stop and render aid after a crash, is a derivative exactly of knowing a crash, or knowing or having knowledge. And I think it is a fairly uncontroversial proposition to say that there is a fundamental difference between saying one should have known something versus they actually knew it. Right, but the Florida Supreme Court articulated that, didn't they, in Dorset? Yes, Your Honor. And they specifically said, as we stated in Mancuso, the duties imposed in the statute are triggered by the driver's actual knowledge of involvement in a crash or accident. I mean, I don't think they could have said it any clearer. I struggle in this case to find clearer ways to say what the clear jury instructions are, and what the clearly established federal law is. Because the issue here on even the exhaustion and the merits claim is, when we get to questions of whether there was a deprivation of due process, whether we're talking about the U.S. Constitution or Florida Constitution, again, there's really no dispute. And I think the Henderson decision from the Supreme Court, Florida Supreme Court makes this clear. They're both protected by the Fifth Amendment. The due process right, when we're talking about state law, necessarily has to look to what the state Supreme Court has said. And the state Supreme Court, to your question, Judge Singal, earlier, the state Supreme Court on the timing has said cases predating tell us that the standard jury instructions are incorrect. This is one of the first cases, as a criminal defense attorney, I took pleasure in seeing that one of the few times is a recognition that the standard jury instruction was wrong. It was a misstatement of law. It was just recognized or corrected later. But there really can be no dispute that the law at the time was wrong. And I think Judge Rosenbaum— But it wasn't the law. It was the pattern, the standard pattern jury instruction. Which again, the standard pattern jury instruction of Florida, it's the standard. But until the Florida Supreme Court says otherwise, you rely on it to your detriment. Well, I would still say, even if you were— This goes back to the claim error question. The lack of objection here and whether to your detriment here, now on 2254, 3850 relief, it was a detriment at the time. But we're now asking the question, was it a deprivation of due process? So at the time, I would be, you know, we could be looking at this claim even as an ineffective assistance of counsel claim if for the failure to object to this jury instruction, that would have been another way to frame it. But as a due process question— Although that probably would have been a losing way to frame it because it was, in fact, the pattern jury instruction. Can I ask you something, though? Let me say this. I think that under the way that the Supreme Court has described exhaustion of the federal claim, that your client is good. But I think that our circuit may have a stricter standard. I'm not sure that I agree that the Supreme Court precedent requires the standard that we have, but we are required to apply it whether we agree with it or not because of our prior precedent rule. And so, you know, under our 11th Circuit precedent, it seems to me that your client had to do more than say the word federal in her claim, right? Even though her federal claim arguably was exactly the same as her state claim. And I wonder if you could address that for us. Sure. I have two and a half responses, but let me make sure I get the two out. One, on the pure question of the prior precedent rule, and I understand there's a 28-J pending on this, but we do have the Watson decision that predates any of the further decisions. Watson, under the prior precedent rule, is the earlier decision it would control. And Watson specifically cites to Pickard. Pickard has not been overturned. Nothing from this court has indicated it's overturned. And the exact language of Pickard is, we are not required to cite book-inverse the federal constitution. We simply require petitioners to present their claims to ensure a reasonable reader will understand. So one aspect of this, the concern about the prior precedent, Watson would take precedent, not to double state that, but over the further cases. But only if there's a direct conflict. I mean, to the extent that the later precedent can be construed as refining as opposed to conflicting directly, we have to follow the later precedent. Yeah, and that goes exactly to my second point. Though I will just book-in that Watson's facts are almost directly on point here. So I don't think there's actually a clear conflict. But on the second point, and I think this goes to just the heart of the state's main cases that they rely on in McNair and as derivatives of Baldwin and Anderson. So really when you look at those cases, and I don't think this circuit has a more, as a stricter standard, I think the refinement really is looking to two categories, if you will. Baldwin concerns situations of where you are either equivocating or raising one claim in state court that's exclusive of state law or is unclear and then switching. So in Pickard, Baldwin, Anderson, each one of those situations, you had a client either raising in Pickard's situation, for example, an incorrect indictment under Massachusetts law or Baldwin, where you're saying ineffective assistance of counsel. And Florida's a similar way in which Florida has specific rules that provide for counsel. Oregon, in that instance, had a more expansive right to counsel. I believe they give counsel on every one of their state post-conviction proceedings or appellate proceedings, even for that matter. So you do have some conflicts of law. The easiest way to probably think about it in this court has applied in, I believe it's French and Preston. You have other cases of where you're relying on speedy trial. That's another area where you have a clear constitutional question as well as a state question. I can think of the First Amendment could be another example, alloyness, as the Supreme Court's taking up. There was a statutory question. There's a constitutional question. So cases like- So your argument is that we could rule in your favor with regard to the exhaustion issue and still be consistent with the 11th Circuit's jurisprudence up until today's date? Absolutely. You're absolutely, Jim Singal. And the reason for that is because when you look at Baldwin, when you look at Anderson, and you look at Pickard, the trilogy of the main Supreme Court cases, and you look at McNair's application, and you look at Preston and Lucas, each one of those situations, you had either somebody raising an equal protection argument and then raising a due process, something different. Or you had a situation of where state law really was in conflict. So that's where the purpose of exhaustion comes into play. Here, and this was a question that was left open in Baldwin, in fact. But here you have a situation, not only do you have the labeling, which Pickard says in most situations that, or has alluded to, that could be enough. But what you have is, in substance, raising the claim and the coextensive nature of the claim, you have the same application of state and federal law, plus the third most important part, by its very nature, the claim itself, the substance of it, which what you would apply the applicable legal body, that is also the same as well. So when you look at our precedent, I don't think there's any daylight, really. It gets tricky. I would fully concede that because there's so many cases that tell us what isn't enough. I think of it as in formal logic terms. There's a lot of cases of what tells us what's sufficient or what's not sufficient, but not necessarily what's necessary. What the Supreme Court, and this court has not retreated from, is what's necessary is that the facts are not enough. And vague assertions, so if Ms. Pringle had just said due process with nothing else, that would not have been enough, one or the other. But what we have is in form, a consistent claim that's a due process claim. We do have the federal labeling, which Pickard said is enough. And no decision from this court that's in conflict or tells us, because we don't have the conflicts of law questions that come up in Baldwin or come up in Anderson or a bait and switch that gets to that heart of the exhaustion question. Because the question really is, we don't want, and I would agree with this on federalism principles, we don't want petitioners to go through state court with one claim and then switch and give federal courts an opportunity. There's no dispute there. And I would lose all credibility if I tried to make that argument, I think. Right, your argument is basically this is the same claim, whether you do it as a federal claim or a state claim. She made the same argument. She used the word federal. So it was exhausted. Essentially, Judge Rosenbaum, I think that's absolutely right. And I think the Supreme Court and this court's precedent, again, going back to Bolt, going back to Watson and nothing changing with other cases because, and I know my friend will most assuredly speak about McNair on rebuttal, but McNair, there was a negative implication of expressly relying on Alabama law and an Alabama rule of evidence, I believe, that was being relied on. Completely different situation. They're apples to oranges. Here, we have a situation and there's really no dispute and it's a fundamental concession that we have the same claim. And when you add on to the fourth layer to this, which is Ms. Pringle proceeding as a pro se litigant, that would even be construed even more liberally, even under this court's precedent, to give her a little bit more leeway than a counsel petition would be in 3850. So when you put all of that together, I believe there's more than enough here to satisfy the exhaustion because the floor to exhaustion and the Supreme Court has really resisted the urge to find that floor because they very easily could have said, you have to say due process or you have to say this. Supreme Court does it all the time. The categorical approach is the perfect example. They just make up a doctrine. They haven't done that here and for good reason because we're not trying to be in this court's precedent to the real question of what this court standard is. This court says, we are not so draconian or formalistic to require separate federal law headings raised in fate court. We simply require petitioners to present their claims such as a reasonable reader or understand it. District court judge here, seasoned veteran district court judge, content not only a fair-minded jurist but a reasonable reader at no issue identifying this as a federal claim. My last point on that, which was the half point, is to the extent there's any doubt, that's why I would really urge this court on bond to rectify the conflict. But I don't think we need to get there because I really don't see that there is a conflict. I think we can be consistent with Watson, consistent with Baldwin, consistent with McNair and Anderson. And in my remaining time, I would just like to say, agree completely with the mayor's determination. I think any fair-minded jurist and the court applying 2254D and Brecht here made the exact right determination. This entire trial had to do with the knowledge standard and the difference between known and should have known, the lack of knowledge unknown and the state's own emphasis on we don't have to prove to you. I understand they said they could, but we don't have to prove knowledge. All she needs to know, she should have known. Well, the evidence here is otherwise. And when we're asking the question what impact this error had on the jury, no fair-minded jurist would really disagree that this error had a substantial injurious effect. In football terms, since it's football season, I will say it took us from first and 10 at the 25 to first and goal at the one. And that made all the difference. Football analogies have been popular this week. I guess because the Super Bowl's coming up. I can blame my kids for that. They've been watching a lot. Thank you, Your Honor. Mr. Duffy, you have six minutes. Yes, ma'am. And I hope to be brief on that. Watson is no longer the law in this circuit. It was clearly abrogated by Duncan versus Henry. And that explains why the court was able to make the decisions  and other cases that we cited in the brief. Those cases would have come out differently under Watson. They didn't. So it's a... I'm sorry. It was abrogated by which case? Duncan versus Henry. We cited it in the brief. United States Supreme Court case. I don't have the citation to hand. But Duncan versus Henry basically is the case that said you have to say if you're raising a federal claim, you have to say so in state court. She did not do that here. Well, she did. She said... She used the word federal. No, she did not. She never used the word federal. And more importantly, she never said due process. You're right. She did not say due process. And I think that would be the kind of thing that you would have to say to alert... But she made the due process argument in state court. I mean... She did not, really. She really did because you don't have to use a magic set of words to make the due process argument, especially since she's pro se. The substance of the argument she made is the due process argument. And that's enough to make the due process argument. The question is whether she did enough to alert the court, the state court, that she was also making it in a federal way. And there was nothing in that. It was argued completely under Florida law. And bear in mind, her pro se pleadings were in addition to council pleadings that council withdrew, but she adopted those pleadings. So nowhere... The only reference to anything federal was boilerplate reference to Rule 3.850. Didn't she use the words U.S. Constitution? She may not have used federal, but U.S. Constitution. And those words come directly from Rule 3.850. So let me ask you this. In the McNair case, that was purely a question of Alabama law. And so that affected the issues here. Let's say that she used the proper language and she used enough words and she made an argument in a paragraph under federal law. How would the posture change? How would we be in a different position here today had she done that? Once she'd done that, she'd be exhausted. It would be exhausted. But exhaustion is a hurdle you have to clear in order to get to the merits. But exhaustion's more like a notice requirement, right? I mean, are you arguing that had she done that, that the lower courts or the state courts would have ruled differently? And, you know, I know you don't have a crystal ball, but truly, what's your thought? I doubt they would have necessarily. I mean, it might have. This might've been the case that later became Cabours and Dorsett. But that didn't happen here. And that's, I mean, Florida state courts are busy. They have a lot of cases. They aren't under an obligation to delve into pleadings and compare claims to claims to see if they can find a federal nugget somewhere embedded in the pleadings and in the case. So, if there are no further questions, we ask that you reverse the decision below and remain with instructions that the conviction for leaving the scene of a fatal crash be reinstated. Thank you. Thank you, counsel. Next up, we have WBY Inc. versus City of